UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHARMEL ALLEN,

       Plaintiff,

                                        Case Number 11-cv-10942

v.                                    Honorable Thomas L. Ludington

DR. SHAWNEY et al.,

       Defendants.

_____ /

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING OBJECTIONS, AND DENYING DEFENDANTS' MOTION TO DISMISS

Plaintiff Charmel Allen has liver problems. And legal ones. She is currently a prisoner in the custody of the Michigan Department of Corrections. This case arises out of the manner that the prison medical staff treated Plaintiff's liver problems — more precisely, the treatment that she contends the staff deliberately withheld. Plaintiff has sued the defendants under 42 U.S.C. § 1983, alleging that their deliberate indifference to her serious medical needs violated her Eighth Amendment rights. The two principal questions presented are whether Plaintiff exhausted her administrative remedies and whether her complaint states a claim on which relief may be granted. For the following reasons, both questions will be answered in the affirmative and the motion to dismiss will be denied.[1]

---

[1] Two ancillary questions are whether the defendants are entitled to qualified immunity and whether the statute of limitations bars Plaintiff's claims. As detailed below, both questions are answered in the negative.

# I

# A

Plaintiff initiated this prisoner civil rights suit in March 2011. The pro se complaint spanned 129 paragraphs and 68 pages (with attachments) and asserted claims against more than 20 defendants.

Thereafter, Plaintiff retained counsel and moved for leave to file an amended complaint. ECF No. 90. The motion was granted. ECF No. 117.

In March 2012, Plaintiff filed a two-count amended complaint. ECF No. 118. Count one, a constitutional tort claim, asserts that Defendants violated Plaintiff's Eighth Amendment rights through deliberate indifference to serious medical needs (specifically, her pain and liver condition).[2] Count two, a garden-variety tort claim, asserts that Defendants intentionally inflicted emotional distress on Plaintiff.

The defendants named in the amended complaint include three corporations, eight doctors, one physician's assistant, and one registered nurse. The first two corporations are Defendants Corizon, Inc. and Correctional Medical Services, Inc. (collectively, "CMS"[3]). These entities contracted with the State of Michigan to provide health care services to state prisoners through March 31, 2009. The third corporation, Defendant Prison Health Services, Inc., contracted with the state to provide health care services to prisoners after March 31, 2009.

The motion to dismiss presently at issue concerns two of the doctors — Craig Hutchinson, M.D., and Vijaya Mamidipaka, M.D. Dr. Hutchinson is an infectious disease specialist who first worked for CMS, then Prison Health Services, Inc. The amended complaint

---

[2] The specific factual allegations contained in the amended complaint are detailed below in the discussion of whether the amended complaint states a claim on which relief may be granted.

[3] Corizon, Inc. was formerly known as Correctional Medical Services, Inc.

alleges that Plaintiff was informed that Dr. Hutchinson was "Plaintiff's primary doctor and is the only doctor authorized to order medication, treatment, or other relief for Plaintiff." Am. Comp. ¶ 54. Dr. Mamidipaka is a primary care physician who also first worked for CMS, then Prison Health Services, Inc.

**B**

Two stipulated orders were entered in April 2012 that sharply circumscribed claims arising out of events through March 31, 2009. ECF Nos. 195, 197.

Specifically, the first order dismissed any claims arising out of events that occurred during that time — except for the deliberate indifference claim against Drs. Hutchinson and Mamidipaka. ECF No. 195. After dismissing those claims, the order further clarified "that the only remaining claim regarding events allegedly occurring at any time prior to and including March 31, 2009 . . . is Plaintiff's Count I (Eighth Amendment Violations) claim against Defendants Craig Hutchinson, M.D., and Vijaya Mamidipaka, M.D."

Another stipulated order was entered four days later. ECF No. 197. It further limited the claims against Drs. Hutchinson and Mamidipaka, providing "that the portion of Count I (Eighth Amendment Violations) that specifically pertains to Plaintiff's allegations of deliberate indifference to Plaintiff's pain issues is dismissed with prejudice." (Thus, the sole remaining allegation against these two defendants concerned their deliberate indifference to Plaintiff's liver condition).

**C**

While this was transpiring, Drs. Hutchinson and Mamidipaka moved to dismiss the amended complaint pursuant to 42 U.S.C. § 1997e and Federal Rule of Civil Procedure 12(b)(6).

ECF No. 148. (The motion was also joined by CMS, the four doctors, and the physician's assistant who were later dismissed as defendants by stipulation.)

In pertinent part, the motion alleges that Drs. Hutchinson and Mamidipaka are entitled to judgment because Plaintiff did not exhaust her administrative remedies. Alternatively, the motion asserts that even if Plaintiff did exhaust her remedies, the complaint does not plausibly state a claim of deliberate indifference. Finally, the motion asserts that even if Plaintiff can establish an Eighth Amendment violation, Drs. Hutchinson and Mamidipaka are entitled to qualified immunity.[4]

## D

Magistrate Judge Hluchaniuk has issued a report recommending that Defendants' motion be denied because Plaintiff did in fact administratively exhaust her remedies. ECF No. 205. The report does not address Defendants' alternative arguments.

Drs. Hutchinson and Mamidipaka filed objections. ECF No. 209. First, they object to Judge Hluchaniuk's recommendation regarding exhaustion. Additionally, they object to Judge Hluchaniuk not addressing the alternative arguments raised in the motion to dismiss.

## II

Any party may serve and file written objections "[w]ithin fourteen days after being served with a copy" of the report and recommendations. 28 U.S.C. § 636(b)(1). The district court will make a "de novo determination of those portions of the report . . . to which objection is made." *Id*. The Court is not obligated to review the portions of the report to which no objection was made. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985).

---

[4] The motion also raises a statute of limitations defense for events occurring before March 10, 2008. As discussed below, the pertinent allegations regarding Drs. Hutchinson and Mamidipaka postdate this period.

### III

### A

### 1

"Prisoner litigation," the Supreme Court observes, "account[s] for an outsized share of filings in federal district courts." *Jones v. Bock*, 549 U.S. 199, 203 (2007) (quotation marks omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 94 n.4 (2006)). Responding to this reality, Congress enacted the Prison Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.*

Among its reforms, the PLRA requires prisoners to exhaust prison grievance procedures before filing suit. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [§ 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

The Supreme Court instructs that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules — rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (citation and quotation marks omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). The Court emphasizes "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

But, as detailed below, the Sixth Circuit instructs that a prison's administrative exhaustion requirements are waivable. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 323 (6th Cir. 2010) (Sutton, J.). Specifically, when the prison elects to address a grievance on the merits rather than invoke a procedural bar to the grievance, the prisoner has exhausted his claim. *Id.*

**2**

Plaintiff, as noted, is an inmate in the custody of the Michigan Department of Corrections ("MDOC").   Under MDOC Policy Directive 03.02.130, a prisoner must follow a four-step procedure before seeking judicial intervention.

First, "Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days." MDOC Policy Directive 03.02.130 ¶ P.  Next, "If the issue is not resolved, the grievant may file a Step I grievance.  The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with the appropriate staff."  *Id*.  Then, "A grievant may file a Step II Grievance if s/he is dissatisfied with the response received at Step I or if s/he did not receive a timely response." *Id*. ¶ BB.  Finally, "A grievant may file a Step III Grievance if s/he is dissatisfied with the response received at Step II or if s/he did not receive a timely response." *Id*.¶ FF.

Paragraph R of the policy elaborates on the required  form and contents of the written grievances from step one through step three, specifying:

> A grievant shall use a Prisoner/Parolee Grievance (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal (CSJ-247B) shall be used to file a Step II or Step III grievance.  The forms may be completed by hand or typewriter; however, handwriting must be legible.  The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  *Dates, times, places, and names of all those involved are to be included*.

*Id*. ¶ R (emphasis supplied).  Interpreting this policy's requirements, the Sixth Circuit has observed that it "explicitly require[s] [the prisoner] to name each person against whom he grieved."  *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009); *see also Peterson v. Cooper*, 463 F. App'x 528, 530 (6th Cir. 2012) (same); *Hall v. Warren*, 443 F. App'x 99, 106 (6th Cir. 2011) (same); *but see Hall v. Raja*, 09-10933, 2010 WL 3070141, at *3 (E.D. Mich.

Aug. 2, 2010) (Lawson, J.) ("Although the [MDOC] policy requires a grievance to include specific names, those requirements are relaxed when the purpose of the grievance has been achieved.").

Yet, as noted, the Sixth Circuit also cautions that the policy's procedural requirements are waivable — when the MDOC elects to address a grievance on the merits rather than invoke a procedural bar to the grievance, the prisoner has exhausted his claim. *Reed-Bey*, 603 F.3d at 323.

In *Reed-Bey*, for example, the prisoner "pursued his grievance through all three levels of prison review, yet he failed to identify the 'names of all those involved' in the grievance." *Id.* After the MDOC denied the grievance on the merits, the prisoner brought suit in federal court. The defendants moved to dismiss based on lack of administrative exhaustion. The district court granted the motion. The Sixth Circuit reversed, explaining:

> Officials at the Department of Corrections, for reasons of their own, overlooked (or perhaps forgave) this procedural failing and chose to address Reed-Bey's grievance on the merits. That makes a difference. The point of the PLRA exhaustion requirement is to allow prison officials "a fair opportunity" to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court. . . .
>
> Yet the equation changes when the State does not enforce its own rules. When prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we. In that setting, the State, as the promulgator of the rules, has had a chance to provide a remedy for the inmate and to decide whether the objectives of the review process have been served. When the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar?

*Id.* at 324–25 (citation omitted) (citing *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 891 (6th Cir. 2009)).

-7-

**3**

Here, as noted, Judge Hluchaniuk reports that Plaintiff has administratively exhausted her remedies. He bases this conclusion on two of Plaintiff's grievances: SCF-08010-195-12d3 ("Grievance 195") and SCF08030-834-12F ("Grievance 834").

**a**

In Grievance 195, Plaintiff made an informal complaint about the lack of medical treatment she was receiving. Dissatisfied with the response she received, she then initiated the written grievance procedure.

At step one, Plaintiff alleged "deliberate indifference to medical need" on the part of "M.D. Hutchinson, Thai, Causo, and any and all others." She explained: "I am suffering unconscionable neglect. The evidence show[s] this is based [on] race. While other nonblacks are receiving medical treatment it is being denied by delay to myself." MDOC responded to the merits of the grievance.

Again dissatisfied with the response, Plaintiff proceeded to step two, reiterating her deliberate neglect claim. Again, MDOC took up the merits of the grievance and detailed the treatment that Plaintiff was receiving for her hepititis.

Yet again, Plaintiff was dissatisfied, and so she proceeded to step three. At that step, MDOC once more took up the merits of the grievance, explaining that "the request for additional specialized testing has been approved and is being arranged. Grievant's allegations regarding racial discrimination can not [sic] be substantiated by the evidence. Grievance appeal denied." This denial was dated August 15, 2008.

**b**

Grievance 834 was likewise disposed of on the merits.  It began when Plaintiff made another informal complaint about her treatment.

Dissatisfied, she then proceeded to step one, writing: "I have seen (5) different Drs. with no results on great physical pain and mental anguish."  MDOC took up the complaint on the merits, with its agent responding: "I reviewed case with Dr. M. Lab work drawn on 3/20/08.  Dr. M will do a chart review of labs."

Plaintiff, dissatisfied with this resolution, proceeded to step two.  Again, MDOC responded to the merits of the grievance.

Again, Plaintiff was dissatisfied and so proceeded to step three.  There, MDOC once again responded to the merits of the grievance, explaining: "Approval for the colonoscopy and guided biopsy after request took some time.  The colonoscopy and biopsy have been completed. Follow-up with a specialist has been requested. . . .  Grievance resolved."  This response was dated September 30, 2008.

**c**

In sum, both grievances were decided on the merits.  Both raise the issue that is the subject of this litigation — the alleged deliberate indifference to Plaintiff's medical needs (in particular, her liver problems).  Judge Hluchaniuk's report that Plaintiff administratively exhausted her remedies is correct.

**4**

Arguing against this conclusion, Drs. Hutchinson and Mamidipaka make two objections. First, Drs. Hutchinson and Mamidipaka object that Plaintiff did exhaust her claims because she

did not explicitly name each Defendant in the grievances.  The Sixth Circuit caselaw, as noted, is to the contrary.  *Reed-Bey* 603 F.3d at 323.

And second, Drs. Hutchinson and Mamidipaka object that grievance 195 "does not grieve the claims Plaintiff now brings regarding the alleged non-treatment of Plaintiff's Hepatitis." Contrary to their assertion, that grievance specifically addressed Plaintiff's hepatitis.  At step one, Plaintiff complained that she was not receiving adequate medical care.  MDOC responded at step two by detailing the care that Plaintiff was receiving for her hepatitis.  The contention that hepatitis was not at issue lacks merit.

The objections will be overruled.

## B

Drs. Hutchinson and Mamidipaka next object that the report erred in not addressing their arguments that the amended complaint does not state a claim for deliberate indifference.  Drs. Hutchinson and Mamidipaka are correct that the report does not address this argument.  They are not correct, however, that the amended complaint does not plausibly allege a deliberate indifference claim.

## 1

Since 1791, the Constitution has expressly prohibited "cruel and unusual punishments." U.S. Const. amend. VIII.   The Supreme Court decided in 1976 that this prohibition includes a proscription against deliberate indifference to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

But the Court cautioned that the amendment does not prohibit every deprivation suffered by a prisoner.  The amendment is only offended by deliberate indifference — "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton

infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id.* at 105–06 (quoting *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 471 (1947) (Frankfurter, J., concurring)).

Consequently, for a prisoner to establish a deliberate indifference claim, he or she must show not only need but knowledge: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Put differently, a deliberate indifference claim "has objective and subjective components." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 894 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 834).

"The objective component requires the existence of a 'sufficiently serious' medical need." *Id.* at 895. And the subjective component requires precisely that — subjective awareness of a sufficiently serious medical need. *Farmer*, 511 U.S. at 836. Negligence is thus insufficient to establish a constitutional violation. *Id.* Gross negligence is likewise insufficient. *Id.* Rather, the prison official must have actual knowledge of a medical condition posing a risk of substantial harm: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

But direct evidence of this subjective awareness is not required. *Id.* at 842. As the Sixth Circuit observes: "Officials, of course, do not readily admit this subjective component, so it is permissible for reviewing courts to infer from circumstantial evidence that a prison official had the requisite knowledge." *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 540 (6th Cir. 2008) (quotation marks and brackets omitted)); see also *Farmer*, 511 U.S. at 842 (noting that factfinders may infer that the risk was actually known based on circumstantial evidence and

"may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious").

## 2

The amended complaint, as noted, alleges that Drs. Hutchinson and Mamidipaka were deliberately indifferent to Plaintiff's liver problems.  The gravamen is that treatment was not provided even though Plaintiff filed "in excess of 150 medical kites, grievances, and other means of communication with health care officials."  Am. Comp. ¶ 90.  The consequence was that "nearly two years . . . passed between the discovery of Plaintiff's symptoms of chronic Hepatitis and Plaintiff's eventual, but preventable, liver cirrhosis."  *Id.* (Plaintiff was diagnosed with hepatitis C "as early as May 1, 2005."  *Id.* ¶ 34.)

### a

The law is well established that hepatitis C and cirrhosis are serious medical conditions.  *See, e.g.*, *Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) (concluding that hepatitis C is serious medical condition); *McKenna v. Wright*, 01 CIV. 6571 (WK), 2002 WL 338375, at *6 (S.D.N.Y. Mar. 4, 2002) (concluding that hepatitis C and cirrhosis are serious medical conditions); *Mize v. Sator*, 3:11-CV-685, 2012 WL 642743, at *2 (M.D. Tenn. Feb. 27, 2012) ("[I]t is undisputed that cirrhosis is a serious medical condition.").

Thus, the question is whether the amended complaint contains sufficient factual allegations to plausibly suggest that Drs. Hutchinson and Mamidipaka were subjectively aware that a substantial risk of serious harm existed and consciously disregarded this risk.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (instructing that to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (internal quotation marks omitted) (quoting *Bell Atl. Corp. v.*

-12-

*Twombly*, 550 U.S. 544, 570 (2007)).  This inquiry, of course, requires an examination of the factual allegations contained in the complaint regarding Drs. Hutchinson and Mamidipaka.

**b**

**i**

Their first contact with Plaintiff, the amended complaint alleges, came in September 2008.  Am. Comp.  ¶ 43.  The previous month Plaintiff had a liver biopsy, which confirmed that she was "infected with the chronic Hepatitis B and C viruses with mild piecemeal necrosis (grade 2) and enlarged fibrotic portal tracts with periportal fibrous septae (stage 2)."  *Id*. ¶ 42.  Dr. Mamidipaka read the biopsy report, yet then "made the deliberate and informed decision not to issue or request any follow-up treatment."  *Id*. ¶ 43.

About a month passed.  *Id*. ¶ 44.  On October 22, 2008, Plaintiff again met with Dr. Mamidipaka.  *Id*.  Again, the doctor "made the deliberate and informed decision not to issue or request any follow-up treatment."  *Id*.

**ii**

Plaintiff contacted Dr. Hutchinson the same day, complaining of "continuing and extreme pain."  *Id*. ¶ 45.   He declined assistance and, moreover, "chose not to pursue any follow-up treatment in full awareness of, or with an indifference towards discovering, the status of Plaintiff's Hepatitis."  *Id*.

Another month passed.  *Id*. ¶ 46.  Still, the doctors took no action to care for Plaintiff.  Am. Compl. ¶ 46.

On November 18, 2008, Plaintiff met with Dr. Hutchinson again.  *Id*.  Although he had access to Plaintiff's medical file (including the biopsy report), Dr. Hutchinson once more did not begin treatment or follow up on the biopsy report's findings.  *Id*.

More time passed.  Thanksgiving.  Christmas.  A new year.  Still no treatment was given to Plaintiff for her hepatitis.  *Id.* ¶ 48.

### iii

In January 2009, Plaintiff again met with Dr. Hutchinson.  *Id.*  At this meeting, "he first mentioned the possibility of treating Plaintiff's Hepatitis."  *Id.*  (This was about five months after the liver biopsy.)  Dr. Hutchinson referred Plaintiff to a university hepatology clinic and scheduled a follow-up appointment for three months later.  *Id.*

Plaintiff saw a doctor at the university clinic in March 2009.  Am. Compl. ¶ 49.

### iv

The university clinic doctor then wrote to Dr. Mamidipaka, explaining that "because Plaintiff is both young and has significant liver disease as a result of the progression of her co-infections of Hepatitis strains thus far, he would highly recommend beginning treatment right away."  *Id.*

After receiving the letter, Dr. Mamidipaka met with Plaintiff, but again "failed to provide Plaintiff with any treatment."  *Id.* ¶ 50.

### v

Four days later, Plaintiff had an abdominal ultrasound, "which revealed that Plaintiff's liver was severely damaged."  *Id.* ¶ 51.  After learning of these results, Dr. Hutchinson did not offer Plaintiff treatment — in fact, he cancelled Plaintiff's appointment with him.  *Id.*

### vi

In April 2009, the university clinic doctor again wrote to Dr. Mamidipaka that "he would definitely consider treatment for her viral hepatitis as mentioned above."  *Id.* ¶ 52 (quotation

marks omitted).  Still, neither Drs. Hutchinson and Mamidipaka chose to act.  *See* Am. Compl. ¶¶ 52–55.

April 2009 passed without Plaintiff receiving treatment from Drs. Hutchinson and Mamidipaka.  As did May.  June.  July.  August.  September.

**vii**

Plaintiff was able to obtain an appointment to see Dr. Hutchinson in October 2009 — but again he cancelled the appointment.  *Id*. ¶ 60.

In November, "Plaintiff filed a medical kite indicating that every one of her appointments with Defendant Hutchinson since May of 2009 had been cancelled . . . and that her wait for treatment at that point had exceeded one year."  *Id*.   Still he did not meet with her.  *See id*. ¶ 62.

Another month, another kite.  *See id*.  In December 2009, "Plaintiff filed another medical kite indicating that she has still not seen Defendant Hutchinson."  *Id*.  Again, he did not meet with her.  *Id*.

**viii**

More months passed.  *See* Am. Compl. ¶ 69.  January.  February.  March.  Then, on March 25, 2010, "Plaintiff filed yet another medical kite in an attempt to receive treatment, indicating that she was still in tremendous pain and had still not seen Defendant Hutchinson for the follow-up visit initially scheduled for March of 2009."  *Id*.  Still more time passed.

**ix**

Plaintiff finally saw Dr. Hutchinson on April 21, 2010.  *Id*. ¶ 70.  At that meeting, he "elected to offer Plaintiff no medical aid."  *Id*.  Instead, he sent her to "the Pain Management Committee" and scheduled a "follow-up in 6–8 weeks."  *Id*.  Evidently, it was scheduled for June 2010.  *Id*. ¶ 72.

**x**

The time for the follow-up appointment came.   Again, Dr. Hutchinson cancelled the appointment.   Am. Compl. ¶ 72.   More months passed.   June.   July.   August.   September.   Still Plaintiff received no treatment from Drs. Hutchinson or Mamidipaka.

On October 27, 2010, "Plaintiff was finally cleared to begin receiving the medication Viread by Defendant Hutchinson for her Hepatitis B and D.   However, Defendant Hutchinson chose to further delay initiating Plaintiff's Hepatitis C treatment, despite the innumerous recommendations by other medical professionals."   *Id*. ¶ 79.   November and December passed without treatment.

**xi**

Plaintiff next saw Dr. Hutchinson in January 2011.   *Id*.   At that time, Dr. Hutchinson "was aware of [Plaintiff] being 'stage 3+ of 4' in the development of liver cirrhosis.   Despite this knowledge, Defendant Hutchinson chose to forego any attempt at treatment."   *Id*. ¶ 87.   This is the last medical appointment referenced in the amended complaint.   (As noted, Plaintiff filed suit in March 2011.)

**xii**

Because of this persistent lack of medical attention, the amended complaint alleges, "Plaintiff's untreated Hepatitis B, C, and D progressed, unchecked, for a period of two years, and as a direct and proximate result Plaintiff now suffers from irreversible cirrhosis of the liver."   *Id*. ¶ 113.

**3**

These allegations disclose no direct evidence of actual subjective awareness of a substantial risk of serious harm on the part of Drs. Hutchinson and Mamidipaka.

Yet the allegations contain ample circumstantial evidence from which a factfinder could reasonably infer that the doctors subjectively knew of the risk "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842.

No later than 2008, the circumstantial evidence suggests, they were subjectively aware that Plaintiff had chronic hepatitis B and C viruses. Both doctors, moreover, had the biopsy report which confirmed that Plaintiff was "infected with the chronic Hepatitis B and C viruses with mild piecemeal necrosis (grade 2) and enlarged fibrotic portal tracts with periportal fibrous septae (stage 2)." Am. Compl. ¶ 42. Yet despite warnings from other doctors (such as the university clinic doctor), they did not attempt to treat Plaintiff's liver condition.

Over the next two years, Plaintiff filed more than "150 medical kites, grievances, and other means of communication" complaining about her pain and liver problems. *Id*. ¶ 90. Nevertheless, Drs. Hutchinson and Mamidipaka did not attempt to treat Plaintiff's liver condition.

The duration and persistence of the lack of treatment, the actual notice from other doctors and Plaintiff herself, and the seriousness of the medical condition are sufficient to plausibly suggest that the doctors subjectively knew of the risk and consciously disregarded it. The amended complaint states a deliberate indifference claim against them on which relief may be granted.

**4**

Arguing against this conclusion, Drs. Hutchinson and Mamidipaka assert that the review should be confined to events through March 31, 2009 (and no further) and that during this time "Plaintiff received multiple medical evaluations and ongoing assessment."

**a**

Drs. Hutchinson and Mamidipaka offer no authority, however, for their assertion that the Court should confine its review to this period of time.  And an independent review reveals none. On the contrary, a court considering a condition of confinement claim, including a deliberate indifference claim, "must examine the totality of the circumstances."  *Rhodes v. Chapman*, 452 U.S. 337, 363 (1981) (Brennan, J., concurring).

And Drs. Hutchinson and Mamidipaka were not sued solely for their alleged deliberate indifference towards Plaintiff through March 31, 2009, full stop — but for their deliberate indifference, period.  And they were responsible for Plaintiff's care, the amended complaint suggests, past March 31, 2009.

While the doctors divide to conquer strategy is understandable, it finds no support in the law.  It must be rejected.

**b**

Likewise unpersuasive is their argument that the amended complaint does not state a claim on which relief may be granted because they gave Plaintiff "multiple medical evaluations and ongoing assessment[s]."

The doctors are correct that more than allegations of medical malpractice are required to state a claim of deliberate indifference.  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  The Sixth Circuit explains "[t]he requirement that the official have subjectively perceived a risk of harm and then disregarded it is meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."  *Id*.

Here, however, the factual allegations in the complaint suggest that the doctors didn't simply misdiagnose Plaintiff's ailment — they were deliberately indifferent to it. They knew in 2008 that Plaintiff had a serious medical condition. Yet over the next two years they persistently refused to treat it. Their motion to dismiss for not stating a claim on which relief may be granted lacks merit.

### C

Drs. Hutchinson and Mamidipaka next object that the report does not address their qualified immunity defense. While Drs. Hutchinson and Mamidipaka are correct that the report does not address the issue, their reliance on that defense is misplaced.

### 1

In *Filarsky v. Delia*, 132 S. Ct. 1657 (2012), the Supreme Court held that an attorney hired by a municipality was entitled to raise a defense of qualified immunity even though he was a private attorney rather than a municipal employee. *Id.* at 1661. The Court explained that "immunity under § 1983 should not vary depending on whether an individual working for the government does so as a full-time employee, or on some other basis." *Id.* at 1665.

Here, Drs. Hutchinson and Mamidipaka are not employees of the state. Nevertheless, they are engaged in a public service and acting on behalf of the government agency, MDOC. Accordingly, they are entitled to raise the defense of qualified immunity. *See, e.g.*, *Titlow v. Corr. Med. Servs., Inc.*, 11-2535, 2012 WL 6097338, at *5–7 (6th Cir. Dec. 7, 2012). On the present record, however, their conduct is not shielded by qualified immunity.

### 2

When the defense of qualified immunity is raised, the plaintiff has the burden of proving that it does not apply. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir.2006). To do so, the

plaintiff must satisfy a two-part inquiry. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  First, the plaintiff must show that the defendant violated one of plaintiff's constitutional rights. *Id*.  And second, the plaintiff must show that the right was clearly established at the time of the violation. *Id*.; *see also Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 538–39 (6th Cir. 2008); *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2006).

Here, for reasons detailed above Plaintiff has plausibly alleged that the doctors conduct violated Plaintiff's Eighth Amendment rights.  The question thus is whether that right was clearly established.

In general, the Sixth Circuit instructs: "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (brackets and quotation marks omitted) (quoting *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992)).  In the particular context of prison medical care, the Sixth Circuit further instructs: "A government doctor merits qualified immunity if he has merely made a reasonable mistake in his medical judgment, but he is not entitled to such immunity if he correctly perceived all the relevant facts, understood the consequences of such facts, and disregarded those consequences in his treatment of a patient."  *Titlow*, 2012 WL 6097338, at *7 (quotation marks omitted) (quoting *LeMarbe v. Wisneski*, 266 F.3d 429, 440 (6th Cir. 2001)).

Here, assuming the jury accepts the version of the facts in the complaint, it could view the persistent refusal of Drs. Hutchinson and Mamidipaka to treat Plaintiff's hepatitis as a conscious disregard for Plaintiff's health in violation of her right not to have her serious medical needs disregarded by her doctors.  As noted, the right to be free from such disregard has been

clearly established since 1976.[5]  Drs. Hutchinson and Mamidipaka are not entitled to qualified immunity.

## D

Finally, Drs. Hutchinson and Mamidipaka object that "any allegations pertaining to events occurring before 3/10/08 are barred by the applicable statute of limitations and must be dismissed."

As detailed above, Plaintiff's first factual allegation regarding the care provided by Drs. Hutchinson and Mamidipaka regards events allegedly occurring in September 2008.  See Am. Compl. ¶ 43.  Their statute of limitations defense lacks merit.

## IV

Accordingly, it is **ORDERED** that the report and recommendation (ECF No. 201) is **ADOPTED**.

It is further **ORDERED** that Defendants' objections (ECF No. 209) are **OVERRULED**.

It is further **ORDERED** that Defendants' motion to dismiss (ECF No. 148) is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: June 10, 2013

<div style="border:1px solid black; text-align:center;">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on June 10, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS

</div>

---

[5] *See generally Rouster v. Cnty. of Saginaw*, 11-10986, 2013 WL 1720830, at *12–14  (E.D. Mich. Apr. 22, 2013) (discussing historical development of deliberate indifference claims).